May it please the court, Ms. Zisman, my name is Jim Halley. I represent appellant Geoffrey Brunick. Mr. Brunick appeals from the trial court's denial of his motion to suppress search of a car in which the police found some weapons. He was ultimately convicted on a conditional plea of being a felon in possession of a firearm and sentenced to 70 months. If you have two cases on the calendar and you want them on the same date, you can call the clerk's office and maybe you'll get them on the same date. I'm not sure I would like to have them on the same day. It's difficult enough for me to have them on successive days. In fact, I have renewed respect for Ms. Zisman, who handles more than one a day. Mr. Brunick challenges the search that results in the discovery of the evidence on which his conviction is based. And he also raises a challenge as to his sentence. I'd like to reserve just a couple of minutes of time for rebuttal and devote my discussion to the search issue. There are three potential bases for justifying the search. One would be a search incident to arrest. The other would be an argument about probable cause. And then the other, the last, would be whether or not this was an appropriate inventory. Turning first to the search incident to arrest, after the district court's decision, the U.S. Supreme Court. I think we know that. And I would be surprised if the government doesn't concede that that's no longer good. So let's go forward. I will save CETA then for rebuttal. In terms of probable cause, the circumstances of the arrest involve an officer observing an unsignaled lane change, pulling over the vehicle, learning that the driver was suspended and on probation for being a felon in possession of a firearm, federal conviction for felon in possession of a firearm, and that the passenger was also convicted of driving while suspended. And on those bases, they arrested the driver, and the passenger, Mr. Brunick, they asked him to step out of the vehicle. And the evidence is in conflict. The district court credited the officer's testimony. The officer's testimony is that a knife that may not be concealed under Oregon law, referred to as a butterfly knife, fell to the ground at his feet as he got out of the car, and they arrested him at that point. Those are the circumstances known to the officers at that time. And we argue that that does not amount to probable cause. Probable cause of what? I'm not even understanding what the argument would be or even that it's being made. Has the government made a probable cause argument? They didn't make an argument in a brief, and I believe that the government will assert that this is a search that may be justified by probable cause. I don't want to miss an argument if it's important. The district court ---- The probable cause to search the car because he ---- well, why don't we see what the government's argument is. Why don't we go on to the inventory issue? Well, if I may, then. The inventory issue. The question here is whether or not this is a permissible search inside of one of two bags. The second bag doesn't matter because after the first bag is opened, then there would certainly be probable cause to open the second. The first ---- Isn't the first case whether they were allowed to impound this car at all? I mean, sees it, given the fact that there's no ---- as I understand it, there's no ---- whether they impound a car under these circumstances or not seems to be a matter of discretion under the rules. That's the first problem with the search, the inventory. Is it a matter of discretion or not? The officer testified that it was. The officer testified that it was up to the driver's discretion whether or not to impound the vehicle. And as I ---- The driver meeting the police officer was a little odd. I don't know what he means by driver. I wasn't there and I didn't get to explore the question. You could read it either way. In either way, it's discretionary. And that kind of discretion is impermissible in an inventory search. So that's the first effect in terms of the permissibility of the inventory. Also, what were the exact facts? The defendant said, or one of them said, my wife can come get the car. Yes. And then there was some notion that she actually was on her way to get the car. Do we have any idea that she arrived? Do we know how far she was? Do we know anything about that? Nothing in the record about that. But the officer can be heard in the dispatch tape saying that someone is on the way to pick up the car. And so clearly this is something that the officers were expecting in those circumstances at that time. That's the first problem with the inventory. My second argument is that the inventory ultimately wasn't conducted in a neutral manner. There were many items of personal property in the car, and if you were to follow the ordinance, you would inventory those items, but they weren't inventoried. Valuable tools and so forth weren't inventoried. Meaning it wasn't written down? Yes. Do we have the inventory sheet in the record? I'm not sure. I'm not sure. How do we know? Well, because it is part of the transcript, Your Honor. The defects and even the district court concluded that the inventory wasn't followed to a T in these circumstances. Not followed to a T, and they really is a relative term. But what do we know about what they actually did? They didn't go look at the vents in the car. What else did they do? They didn't inventory tools that were in the vehicle. The third point about the inventory is that in order to be valid, it has to be judged on the basis of State law. It's somewhat unusual in terms of Federal jurisprudence concerning search and seizure, but the Wanlis case makes clear that State law controls whether or not there are sufficient standards under South Dakota v. Opperman, Bertine, Florida v. Wells and so forth in Judge Rehnquist's words to channelize or channel the officer's discretion. And in this case, we have an ordinance that was passed in or adopted in 1996 that defines closed containers and authorizes officers to search closed containers if they believe that the closed container contains valuables or items that might be dangerous to the officers. Looking at Oregon law, there was a large body of law that defined where officers might open closed containers at that time. And you have to read the ordinance in conjunction with those decisions. Those are set out in my reply brief. The most informative one might be the 1989 case of State v. Munk v. Fincher, where the police in a station search a wallet and purse. They search in a the wallet and purse is okay, but then searching inside of containers found in the wallet and the purse is not permissible under Oregon law because those specific containers, a Tylenol bottle, a cigarette case, and I think a leather pouch, were not uniquely designed to contain valuables. And there's a landscape of cases that determine what kind of container may be searched pursuant to an inventory in Oregon and what may not. The oldest case has to do with a fishing tackle box. You can't search inside of a fishing tackle box. Now, which of our cases or of any circuit court cases have relied on State decision law? I mean, what we have here is State decisional law, State really under the State Oregon Constitution, which is kind of sitting on top of the local ordinances and the statutes, right? Right. And it's unusual. It is unique. The one case that I could cite that relies on State law is Juan Luis where this Court found that an inventory search in Washington was impermissible because the officer didn't comply with a Washington statute or case, I don't know, that said that the officer must first ask the driver, may I search? The officer didn't do that, impermissible under Washington law, bad search federally. The reason to look at State law is the unique place that an inventory occupies in the police authority to operate. They have the authority to search when they have probable cause. That's a protection that arises directly out of the Fourth Amendment. They have the right to conduct an investigatory pat-down when there are circumstances that lead them to believe that there might be a crime afoot and as an investigative or a protective pat-down. An inventory, on the other hand, steps all the way away from any idea of the the or any notion that there's criminal activity afoot. It's separate and apart from that. And it's to be neutral and standard so that it's not subject to discretion and the officers don't get to pick and choose when does it happen. That's why it matters for Federal law whether it's good under State law. If it isn't channeled that way, then the officers may exercise their discretion in conducting an inventory search and choose when they will look into containers that they otherwise may not look into under Oregon law and when they won't. It just invests them with an enormous amount of discretion in a circumstance where there's no probable cause to search, no reasonable suspicion to search. That's why. That's why it's important to look to State laws to make sure that there are rules and standards that control officer discretion. Okay. Thank you very much.  I'll give you a minute in rebuttal. Counsel. Good morning. May it please the Court. Kelly Zusman appearing on behalf of the United States. I'd like to start with the inventory exception and respond to the other two. Why don't we tell us first whether the other two are off the table? No. They are on the table. And we believe that this case is still valid under Arizona v. Gantt under the Gantt 2 exception, if you will. Gantt recognized that a search incident to arrest of the driver of an automobile is still valid in two circumstances. One is where the arrestee is left to wander around and can grab into the car. That was not true here. Definitely not true here. Mr. Brunick and Mr. Waddell were both handcuffed and secured in the back of a police patrol car. Gantt 2, however, still allows for the search of a passenger compartment of a vehicle where the officers reasonably believe that there may be evidence of a crime inside and where that arrest then is one in which the officers could find evidence of the crime of arrest. But the arrest, crime of arrest were driver with a suspended license. And what was Brunick arrested for? The driver, Mr. Waddell, was arrested for driving while suspended. And I would agree, if that was the only arrest we had going on here, that we would fall under Arizona v. Gantt. But Mr. Brunick was arrested for carrying a concealed weapon. Right, on his body. Exactly. So why is there evidence of that going to be in the car? Well, just like in New York v. Belton, when they pulled the driver and the passengers over, they smelled marijuana and they arrested all of the passengers for possession of marijuana. Now, you could say that was complete as well. But instead, they looked inside the car for further evidence of marijuana possession. Here, there could have been further evidence of Mr. Brunick's ---- Oh, but somebody who has smelling of marijuana doesn't necessarily possess it. I mean, but there's some evidence that he possessed it. There's no evidence that he had another weapon. Well, two things to that. One is there may have been evidence of his possession of the weapon. There could have been a receipt. There could have been a knife sheath. There could have been other evidence of his possession. In addition, in Michigan v. Long, the Supreme Court recognized that the presence of a butcher knife that they found on the floorboard in front of the driver's seat gave them reasonable suspicion to believe that there could be other weapons inside the car and justified the search of the passenger compartment of the car. So two things. So we do believe that this case falls. Arizona v. Gant recognized that New York v. Belton remains good law. It's just much narrower than many of the courts have construed it. So we believe that that forms an alternative basis for affirming Judge Mossman's determination that the motion to suppress should be denied. Now, our primary argument, though, is the inventory search exception. And there, in answer to your question earlier, whether or not to impound the vehicle is within the discretion of the officer so long as certain enumerated offenses are present. And here, and that's you can find that in the record at ER 57, it's Appendix C to the Beaverton City Policy. And what it says is if someone is driving while suspended, the officer may impound the vehicle. Okay, but doesn't Colorado v. Bertine say that the decision to impound the vehicle has itself to be constrained by restraints on discretion? And here there was somebody coming over to get the car, and for unexplained reasons, they nonetheless impounded it. And two things with that. First off, there was no challenge to the legitimacy of the impound before the district court. The defendant's challenge before the district court to the inventory search was twofold. First, he claimed that the officer broke open the lock on the red bag. And second, he claimed that the inventory itself was conducted in a slipshod manner. You're saying that there was a waiver of this problem. Exactly. There has been no challenge to the legitimacy of the officer's decision to impound that car. And under Colorado's law ---- Let me ask you about the red bag. What, if anything, provided the basis for the officer to think that the red bag contained valuable or dangerous property? Well, Officer Lutu answered this during the evidentiary hearing. And what he said was, first off, he was concerned that there may be weapons, because as Mr. Brunick stepped out, the butterfly knife fell from his person. Second, the hefty ---- Would that qualify? I'm sorry? Would that qualify? I believe so, yes. It's only a reasonable belief. I know, but what is dangerous? I mean, I assume that dangerous in that category, in this context, means something that is going to hurt somebody if left alone. Yes. Dangerousness is actually specifically defined by the Beaverton City Policy. It's in Appendix C. In addition, the other reasonably ---- What Beaverton City Policy says is if the officer reasonably believes the closed container contains either valuable, and Beaverton defines that as of a value over $500. And Officer Lutu testified that the car was filled with tools, and he saw at least a couple of acetylene torches. But that's not why he said he did it. It is. He said there was two reasons. He was concerned that there may be valuable tools because of the presence of other tools in the car that were loose, and at least two acetylene torches that were seized because he believed they were over $500 in value, and because of the danger posed. And Officer Lutu, I believe he testified to that at SCR 69. Can you tell me where the definition of dangerousness is? That appears in, I believe it's Appendix C to the Beaverton City Policy, which is I think ER 57 or 58. Thank you. Mr. Hallie's pointing to me to ER 58, Your Honor, that defines valuable and dangerous personal property. And any item of personal property that under the circumstances in which it is possessed is readily capable of causing physical injury. Well, why is a gun sitting in a bag readily capable of causing physical injury in those circumstances, just sitting there? Well, once it's picked up, and once the decision is made to impound the car, Beaverton City Policy says it must be inventoried. And the firearm with the silencer was loaded. And as we know, there are unfortunately accidents. There was no testimony here about whether the safety was on or off, but firearms are known to go off when they're moved around. In a car and it's just sitting there. But he had to pick it up as part of the inventory process. He didn't have to pick it up unless he was going to look at it. If he didn't pick it up, it was a lot less dangerous. But he was following Beaverton City Policy. Well, that's what I'm asking you. Is he following the Beaverton City Policy? He is. By going through, and also in answer to one of the questions you raised earlier, the checkoff list for his going through the inventory was Exhibit 11. And so it is in the district court record, although it's not provided with the excerpt of records. So Exhibit 11 is where he checks off going through each portion of the car. He starts with the passenger compartment, the front seat, back seat, checks them off, and there's one of those little diagrams like you get when you rent a car, where he's to note any body damage. So he follows that. But he didn't do that, is my understanding. He did not do the body damage. But, however. He didn't check off everything that was in the car? He did. He checked off each portion of the car that he searched as he searched it. But apparently, for example, these tools that were there didn't appear on the list. The tools that he believed were under $500 were not specifically listed. The acetylene torches, though, were. And, again, because Beaverton directs that you're supposed to inventory items that are of more than $500 in value. So Judge Mossman concluded that although they didn't follow the procedures to a T, that it was certainly sufficient to justify the case. Kagan. And I'm going to ask you a question about the case of the Oregon Supreme Court and court of appeals cases, which appear to be more limited in what can be searched during an inventory search than the Beaverton ordinance. Several fold. First, the cases that Mr. Halley cites in his reply brief, he's arguing for the proposition that in order to search a bag in a car, it must be designed to hold valuables. That was not raised before the district court. It was not raised in his opening brief and, therefore, should be deemed waive. Second, this court in Cormier held that an inventory search has to be valid and inconsistent with local and state law. No court, to my knowledge, has ever held that it must also be consistent with the state constitution. The cases that Mr. Halley cites all rely upon Article I, Section 9 of the Oregon Constitution, and Oregon has consistently said that they do not interpret that provision in a manner consistent with the Fourth Amendment. It's the Fourth Amendment that controls here. But if the police were not, however one looks at it, the Oregon Constitution is state law and the police have to follow it, and if they're not following it, then they are doing an invalid inventory search. But the question here is, did they follow the Beaverton City policy? Well, that's the question is whether that's the question. And this Court has held that is the question. That is what we're looking at. What about the Wanless case? I'm sorry? What about the Wanless case? And it's not coming to me directly. The cases that he does cite, though, not only do they involve Article I, Section 9 of the Constitution, but they also – sorry, I just lost my train of thought. Oh, they also interpret inventory policies from the City of Portland and the City of Gresham. Those two city inventory policies include the language about the items must be designed to hold valuables, such as purses or wallets. Beaverton does not. And none of the cases stand for the proposition that – But that's because it's an invalid policy under Oregon law. And the question is, how can they rely on an invalid policy under Oregon law? But he hasn't argued that the Beaverton policy is itself invalid. He didn't argue that to the district court, and he didn't argue that in his opening brief. And I didn't even see that argument directly made in his reply brief. So it's our position that this search was good, both as an inventory search and under Gantt 2, the exception that remains in Arizona v. Gantt, because it falls still within New York v. Belton. Unless there are any further questions, I will submit. Is it a problem? If the car was not going to be impounded, there wouldn't have been a need to make an inventory search. Would there have been, if the car was not going to be impounded? That's correct. It's going to be picked up by the wife. That's correct. But we – What do we do with the statement that the wife is going to be picked up? And that's not clear from this record that the wife was on her way. Apparently, there was some attempt to reach her, but there's no evidence in this record that a decision had been made not to impound the car or to wait for the wife. Well, obviously, the decision wasn't made, and they did impound it, but the fact that she was on her way was apparently on the police radio. Is that not true? And that doesn't make this an invalid inventory search. They still followed Beaverton policy. Why not? I mean, leaving aside waivers and so on, it strikes me as absolutely insupportable on just basic Fourth Amendment grounds that if you have no basis for an – the basis for impounding a car is because it's going to – either it's going to be a traffic problem or a danger of some kind. And if the car is going to disappear in the next 15 minutes, let's suppose we knew that, do you think the police could still, still impound the car? Yes. Pursuant to this policy, they could. You can have a policy that says we're going to seize your car even though your wife was standing there. Beaverton City policy says if we are arresting the driver for driving while suspended, we can impound that car. Even if she's standing there saying I want to drive the car? Yes. What about our case about the car in the driveway where they said you can't do that? I'm sorry? The case about the car in the driveway where they said you can't impound a car in somebody's personal driveway just because – even if it's policy? And we don't – this was on a roadway. Both the driver and the passenger. But there's no evidence it was in anybody's way on the roadway. And, again, what's at issue here is did these officers follow the policy? And they did. My ultimate position is that there is – the policy can say anything it wants about taking somebody's car if they're arrested for something. Even if there's a person there who can – who legally can drive it away and is authorized to do so. That's your ultimate position. No. My position is that this policy says they can impound a car if they are arresting someone for driving while suspended. Even if there's somebody else who could drive the car away. Right. The policy doesn't address that. And we don't have that situation here. We didn't have a person standing there with a valid driver's license ready and willing to drive that car away. Okay. Thank you very much. Are we giving him a minute? Yes. We are giving him one minute. Thank you, Your Honor. I just wanted to talk briefly about Michigan v. Long. It's based on very, very different facts. It's a car at night in a rural area. It goes off a road into a ditch. The driver gets out. He appears intoxicated. But what about the Gantt 2 point in 30 seconds? The Gantt 2 point, meaning reasonably believe that there's evidence of crime. Michigan v. Long, I thought, was part of their argument regarding that. It's a very, very different set of circumstances in terms of reasonable belief. And in terms of Belton, the odor of marijuana inside of a car certainly would support the conclusion that there's marijuana in the car, whereas this is a discreet item that's on the ground. It's not an enormous knife. It's not like the butcher knife in Michigan v. Long. It's a small knife. It's prohibited. You can't carry it concealed because the blade swings open by gravity. It's not of the same nature as the butcher knife in Long. So there's just no reasonable basis for concluding that there would be evidence of crime inside of the vehicle. Okay. Thank you very much. Thank you. The case of United States v. Brunich is submitted. We will take a short break.
judges: Farris, Nelson D. W., Berzon